**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| David J. Swiecinski, DDS, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>     v.<br><br>Delta Dental Insurance Company; DeltaUSA; Delta Dental Plans Association; Arizona Dental Insurance Service, Inc., d/b/a Delta Dental of Arizona; Delta Dental Plan of Arkansas, Inc.; Delta Dental of California; Colorado Dental Service Inc. d/b/a Delta Dental of Colorado; Delta Dental of Connecticut; Delta Dental of Delaware, Inc.; Delta Dental of the District of Columbia; Hawaii Dental Service; Delta Dental of Idaho, Inc. d/b/a Delta Dental of Idaho; Delta Dental of Illinois; Delta Dental of Indiana, Inc.; Delta Dental of Iowa; Delta Dental of Kansas, Inc.; Delta Dental of Kentucky, Inc.; Maine Dental Service Corporation, d/b/a Delta Dental Plan of Maine; Dental Service of Massachusetts Inc. d/b/a Delta Dental Plan of Massachusetts; Delta Dental Plan of Michigan, Inc.; Delta Dental of Minnesota; Delta Dental of Missouri; Delta Dental of Nebraska; Delta Dental Plan of New Hampshire, Inc., Delta Dental of New Jersey, Inc.; Delta Dental Plan of New Mexico, Inc.; Delta Dental of New York Inc.; Delta Dental of North Carolina; Delta Dental Plan of Ohio, Inc.; Delta Dental Plan of Oklahoma; Oregon Dental Service d/b/a Delta Dental of Oregon; Delta Dental of Pennsylvania; Delta Dental of Puerto Rico, Inc.; Delta Dental of Rhode Island; Delta Dental of South Dakota; Delta Dental of Tennessee; Delta Dental Plan of Vermont, Inc., Delta Dental of Virginia; Delta Dental of Washington; Delta Dental Plan of West Virginia, Inc.; Delta Dental of Wisconsin, Inc.; Delta Dental Plan of Wyoming d/b/a Delta Dental of Wyoming,<br><br>               Defendants. | **CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................2

II.     JURISDICTION AND VENUE...............................................................................6

III.    INTERSTATE COMMERCE ...................................................................................7

IV.     PARTIES ...................................................................................................................8

        A.      Plaintiff ..........................................................................................................8

        B.      Defendants .....................................................................................................8

V.      FACTUAL ALLEGATIONS ..................................................................................14

        A.      Background...................................................................................................14

        B.      Defendants' Market Allocation Conspiracy ...........................................20

        C.      Defendants' Joint Anticompetitive Compensation of Dentists...........24

VI.     CLASS ACTION ALLEGATIONS ........................................................................31

VII.    CAUSES OF ACTION ............................................................................................33

        COUNT ONE..........................................................................................................33

        COUNT TWO..........................................................................................................35

        PRAYER FOR RELIEF ..........................................................................................36

        JURY DEMAND .....................................................................................................37

Plaintiff David J. Swiecinski, DDS ("Plaintiff"), on behalf of himself and proposed classes (defined below) of all others similarly situated, brings this class action against defendants Delta Dental Insurance Company; Arizona Dental Insurance Service, Inc., d/b/a Delta Dental of Arizona ("DDAZ"); Delta Dental Plan of Arkansas, Inc. ("DDAR"); Delta Dental of California ("DDCA"); Colorado Dental Service Inc. d/b/a Delta Dental of Colorado ("DDCO"); Delta Dental of Connecticut ("DDCT"); Delta Dental of Delaware, Inc. ("DDDE"); Delta Dental of the District of Columbia ("DDDC"); Hawaii Dental Service ("HDS"); Delta Dental of Idaho, Inc. d/b/a Delta Dental of Idaho ("DDID"); Delta Dental of Illinois ("DDIL"); Delta Dental of Indiana, Inc. ("DDIN"); Delta Dental of Iowa ("DDIA"); Delta Dental of Kansas, Inc. ("DDKS"); Delta Dental of Kentucky, Inc. ("DDKY"); Maine Dental Service Corporation, d/b/a Delta Dental Plan of Maine ("DDME"); Dental Service of Massachusetts Inc. d/b/a Delta Dental of Massachusetts ("DDMA"); Delta Dental Plan of Michigan, Inc. ("DDMI"); Delta Dental of Minnesota ("DDMN"); Delta Dental of Missouri ("DDMO"); Delta Dental of Nebraska ("DDNE"); Delta Dental Plan of New Hampshire, Inc. ("DDNH"), Delta Dental of New Jersey, Inc. ("DDNJ"); Delta Dental Plan of New Mexico, Inc. ("DDNM"); Delta Dental of New York Inc. ("DDNY"); Delta Dental of North Carolina ("DDNC"); Delta Dental Plan of Ohio, Inc. ("DDOH"); Delta Dental Plan of Oklahoma ("DDOK"); Oregon Dental Service d/b/a Delta Dental of Oregon ("DDOR"); Delta Dental of Pennsylvania ("DDPA"); Delta Dental of Puerto Rico, Inc. ("DDPR"); Delta Dental of Rhode Island ("DDRI"); Delta Dental of South Dakota ("DDSD"); Delta Dental of Tennessee ("DDTN"); Delta Dental Plan of Vermont, Inc. ("DDVT"), Delta Dental of Virginia ("DDVA"); Delta Dental of Washington ("DDWA"); Delta Dental Plan of West Virginia, Inc. ("DDWV"); Delta Dental of Wisconsin, Inc. ("DDWI"); and Delta Dental Plan of Wyoming d/b/a Delta Dental of Wyoming ("DDWY") (collectively, the

1

"Delta Dental State Insurers"); and DeltaUSA and Delta Dental Plans Association (together with the Delta Dental State Insurers, "Delta Dental" or "Defendants"), demanding a trial by jury of all issues so triable. Plaintiff alleges the following, based upon personal knowledge as to matters relating to himself, and upon information and belief, documents from related litigation, and the investigation of counsel as to all other matters.

## I.    **INTRODUCTION**

1.    This case involves a contract, combination, or conspiracy among the Defendants and their co-conspirators to allocate territories of operation within the United States and its territories, in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3) and the New Jersey Antitrust Statute (N.J.S.A. § 56:9-1, *et seq*) in order to suppress compensation paid by Defendants to Plaintiff and members of the proposed Classes at rates that are below levels that would prevail in a competitive marketplace to dentists who are members of the Delta Dental provider network (the "Delta Dental Providers").

2.    Horizontal agreements among competitors to divide markets and fix prices, such as the agreement alleged herein, are *per se* illegal under Section 1 of the Sherman Act. Defendants' conduct has suppressed competition, fixed, raised, and stabilized reimbursement rates paid by Defendants to Delta Dental Providers, reduced consumer choice and consumer welfare, and caused Plaintiff and members of the proposed Classes antitrust injury in the form of receiving lower reimbursement rates than those that would have prevailed in a market undistorted by the Defendants' anticompetitive conduct.

3.    Plaintiff is a New Jersey dentist that has accepted Delta Dental insurance plans and provided services to patients insured by Delta Dental in return for reimbursements from Delta Dental. Plaintiff seeks to represent the proposed nationwide Class and the New Jersey Class

(defined below) which include tens of thousands of unique dental practices operating within the United States generally and New Jersey specifically, most of which are small sole-practitioner operations.

4.      The Delta Dental State Insurers are predominantly not-for-profit dental services corporations that, in the words of the Delta Dental Plan Association, collectively comprise the "nation's leading provider of dental insurance." The Delta Dental State Insurers provide dental insurance to more than 78 million U.S. customers in all 50 states, the District of Columbia, and Puerto Rico. As of 2014, Delta Dental processed "97 million dental claims or approximately 1.8 million every week" and reported $19.5 billion in revenue.[1]

5.      As dental insurance companies, the Delta Dental State Insurers contract with dental practices, including Plaintiff and members of the proposed Classes, for rates at which the Delta Dental State Insurers agree to reimburse dental practices for dental goods and services provided to patients with Delta Dental insurance plans.

6.      Although the Delta Dental State Insurers are independent companies, all are members, or affiliates of members, of the Delta Dental Plans Association. Defendants facilitated the conspiracy alleged herein through the Delta Dental Plans Association, including by requiring each Delta Dental State Insurer to enter into uniform contracts with the Delta Dental Plans Association. These contracts restrict each Delta Dental State Insurer to an assigned territory, prevent Delta Dental State Insurers from competing with each other, and restrict the Delta Dental State Insurers from offering dental insurance plans outside of the Delta Dental brand.

7.      The Delta Dental State Insurers have each secured market power within their

---

[1] *The Delta Dental Organization Fact Sheet 2015*, http://dentalinsurancealabama.com/wp-content/uploads/2017/02/DDPAFactSheet-2015.pdf. (Google cache version available Jan. 31, 2020).

3

assigned territories, and Defendants, as a unified enterprise, have secured market power over the

market for dental insurance across the United States. Leveraging their market power,

Defendants agreed to fix the reimbursement rates at which they reimburse Delta Dental

Providers for services provided to patients with Delta Dental insurance at below-market levels.

Because each of the Delta Dental State Insurers has market power in its assigned territory, Delta

Dental Providers have no choice but to accept patients with Delta Dental insurance and accept

the anticompetitive reimbursement rates required by the Delta Dental insurance plan.

8.      Defendants' conspiracy was the subject of prior lawsuits and governmental

actions.

9.      For example, the California Dental Association ("CDA") and certain dentists

brought a lawsuit against DDCA, alleging contractual and unfair competition claims associated

with DDCA's proposal in 2011 to lower compensation to dentists under its standardized provider

agreement for the Delta Dental Premier network.  *See California Dental Ass'n v. Delta Dental of*

*Cal.*, No. CGC 14-538849 (S.F. Cal. Super. Ct.) (the "CDA Case"). The case was settled in 2015

for over $65 million. The settlement was granted final approval in 2018.[2]

10.     Similarly, in June 2018, the Washington State Dental Association ("WSDA")

filed a complaint with the Antitrust Division of the Washington State Attorney General's Office,

alleging that DDWA engaged in illegal practices. The WSDA explained in detail how DDWA's

anticompetitive conduct (including 2011 rate cuts similar to those applied by DDCA) has

injured both dentists and patients:[3]

---

[2] California Dental Association, *Delta Dental Litigation Resolution*, available at
https://www.cda.org/Portals/0/pdfs/delta_settlement_summary.pdf (last visited Apr. 10, 2020).

[3] WSDA, *WSDA Asks Attorney General to Investigate Potential Delta Antitrust Practices*,
(July 2, 2018), https://www.wsda.org/member-center/delta/2018/07/02/wsda-asks-attorney-general-to-investigate-potential-delta-antitrust-practices (last visited Apr. 10, 2020).

Unfortunately, the impact of Delta's market power is well-known to dentists and their patients. Given its predominant market share, the company wields substantial bargaining leverage when contracting with dentists. Delta effectively offers its contracts to dental providers on a "take it or leave it" basis, with no room for negotiation, and with complete control of rates and terms.

For example, in 2011, Delta unilaterally and dramatically reduced its reimbursement rates for network dentists by approximately 15 percent. These new rates failed to cover many dentists' costs for the provision of some services.

In the first five years following that precipitous reduction, Delta increased its benefit plan enrollees by 27 percent, its premium revenue by 30 percent, and its premium revenue-per-patient by 2 percent.

During that same period, Delta's Chief Executive Officer's compensation increased by 127 percent and its Board Chairman's compensation increased by 115 percent. Only 10 percent of Delta's increased premium revenue-per-patient was directed towards patient care and the company's cash and investments increased by 67 percent.

While the company dramatically reduced reimbursements to dentists, it appears Delta retained the bulk of its savings for its corporate benefit, rather than passing these savings along to the dental patients covered by its plans.

"There is concern that patients are losing access to care as a result of Delta's reimbursement rates and what many perceive as predatory behavior," says WSDA Executive Director Bracken Killpack, noting that, in addition to driving some dentists to leave the market, others have been forced to sell their practices and retire earlier than they otherwise would have.

Delta's actions have had other negative consequences for patients as well, including reduced access to innovations in dental care. For example, patient radiation exposure from digital X-rays can be as little as 10 percent of the exposure from film-based radiography. But reduced reimbursement means that many dentists can no longer afford these capital-intensive technological advances for their practices and their patients.

Similarly, [Delta's] fee reduction has forced many dentists to eliminate or reduce the volume of Medicaid patients or uncompensated care they provide. Because Washington's Medicaid reimbursement rates are already extremely low, serving these patients places a significant financial burden on dental practices. When Delta unilaterally reduced reimbursement rates for non-Medicaid patients, whose care would otherwise help a dental practice cover this burden, it made it unaffordable for many dentists to provide discounted or free care to meet the needs of this underserved population.

Other changes imposed by Delta aren't driven by, or aligned with, improved patient care. The company requires preventive periodontal services or treatments to be made in multiple visits simply for administrative, not clinical reasons. It has changed benefit coverage of some diagnostic procedure codes, including eliminating coverage for bitewing films essential in detecting disease between teeth, increasing intervals between coverage for panoramic X-rays, and refusing coverage for certain standard periodic X-rays for children.

Over the years, patients have come to expect these and similar basic diagnostic services to be covered by their dental benefit plans. When these necessary diagnostic tools aren't covered, patients are surprised and often frustrated to learn that they now must bear the cost. Some who may be unable to afford the additional expense are forced to refuse important procedures, running the risk that they may require more complex and expensive future care.

11.    But for the conspiracy alleged herein, dental plan sponsors and members would have a greater choice as to the dental insurance they choose to purchase, Delta Dental State Insurer reimbursement rates would be significantly greater, and the Delta Dental Providers would have a greater choice in the dental insurance they choose to accept from their patients.

**II. JURISDICTION AND VENUE**

12.    Plaintiff brings federal antitrust claims under Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1 and 3, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1367.

13.    This Court has personal jurisdiction over each Defendant on multiple bases, including: (1) Defendant Delta Dental of New Jersey, Inc. ("DDNJ") is headquartered in, incorporated in, located in, and/or has entered into contracts with Dental Service Providers in New Jersey; (2) all of the Defendants have significant business in and contacts with New Jersey through national insurance programs, both by way of their provision of dental goods, services, and facilities to consumers insured by Delta Dental in New Jersey and by their division of revenue resulting from such provision; (3) all Defendants conspired with Delta Dental Plans Association and DDNJ; and (4) all of the Defendants require Dental Service Providers who are

in the individual provider networks of each Defendant to accept patients of the other Defendants, including DDNJ-insured patients.

14.    This Court has personal jurisdiction over Defendants under Section 12 of the Clayton Act, 15 U.S.C. § 22, because the Defendants transacted business in this District.  This Court also has personal jurisdiction because Defendants participated in a conspiracy in which Delta Dental entities and their conspirators committed acts in furtherance of the conspiracy in and directed at New Jersey.  This Court also has personal jurisdiction because Defendants in person or through their agents and co-conspirators transacted in business, contracted to supply goods and services, regularly do business, and derive revenue within New Jersey.

15.    Venue is proper in this District under Section 12 of the Clayton Act, 15 U.S.C. § 22, because Defendants transact business in this District, and 28 U.S.C. § 1391, and because a significant part of the events, acts and omissions giving rise to this action occurred in the District.

## III. <u>INTERSTATE COMMERCE</u>

16.    Defendants' activities as set out in this Complaint have substantially affected and are within the flow of interstate trade and commerce.  Many of the Delta Dental Providers provide services, goods, or facilities to persons who reside in other states.

17.    The Delta Dental Plans Association is involved in interstate commerce.  It controls many of the operations of each of the individual Plans, controls the marketing and use of the "Delta Dental" brand by each of the Plans, and dictates the terms and conditions of the standardized Delta Dental Provider Agreement that each Plan imposes on dentists who become part of the Delta Dental network.

18.    Plaintiff and members of the proposed Classes have used interstate banking

facilities and have purchased substantial quantities of good and services across state lines for use in providing dental services to Delta Dental insured consumers.

## IV. PARTIES

### A.    Plaintiff

19.    Plaintiff David J. Swiecinski, DDS ("Plaintiff") is a dental services provider located in Pitman, New Jersey.  During the Class Period defined below, Plaintiff provided dental goods and services to patients insured by Delta Dental pursuant to his in-network contract with DDNJ.  Due to the anticompetitive conduct alleged herein, Plaintiff was deprived of the choice of accepting dental patients under a greater number of insurance plans than he would have been in a competitive market, and Plaintiff was reimbursed less for providing dental goods and services than he would have been but for Defendants' anticompetitive conduct alleged herein. Consequently, Plaintiff has been injured in his business or property as a result of Defendants' violations of the antitrust laws.

### B.    Defendants

20.    Defendant Delta Dental Plans Association is located at 1515 22nd St # 450, Oak Brook, IL 60523, USA.  Delta Dental Plans Association is a national association of 39 independent Delta Dental companies.  The member Plans of the Delta Dental Plans Association vote on its actions and elect its officers, who are oftentimes officers of an individual Plan.

21.    Defendant Delta Dental Insurance Company is located at P.O. Box 2059 Mechanicsburg, PA 17055-2059 and has Payer #AARP1. Delta Dental Insurance Company is the Delta Dental licensee for Alabama, Florida, Georgia, Louisiana, Mississippi, Montana, Nevada, Texas, and Utah.

22.    DeltaUSA is located at 1515 W 22nd Street, Suite 450, Oak Brook, IL 60523.

8

DeltaUSA is a subsidiary of Delta Dental Plans Association and facilitated the conspiracy alleged herein.

23.    Defendant DDAZ is located at P.O. Box 43026, Phoenix, AZ 85080, and has Payer #86027. Throughout the Class Period, DDAZ exercised control over the Delta Dental Plans Association. DDAZ is the Delta Dental licensee for Arizona.

24.    Defendant DDAR is located at P.O. Box 15965, N. Little Rock, AR 72231- 5965, and has Payer #CDAR1. Throughout the Class Period, DDAR exercised control over the Delta Dental Plans Association. DDAR is the Delta Dental licensee for Arkansas.

25.    Defendant DDCA is located at P.O. Box 997330, Sacramento, CA 95899-7330, and has Payer #77777. Throughout the Class Period, DDCA exercised control over the Delta Dental Plans Association. DDCA is the Delta Dental licensee for California.

26.    Defendant DDCO is located at P.O. Box 173803, Denver, CO 80217-3803, and has Payer #84056. Throughout the Class Period, DDCO exercised control over the Delta Dental Plans Association. DDCO is the Delta Dental licensee for Colorado.

27.    Defendant DDCT is a subsidiary of Defendant DDNJ and has Payer #22189. Throughout the Class Period, DDCT exercised control over the Delta Dental Plans Association. DDCT is the Delta Dental licensee for Connecticut.

28.    Defendant DDDE shares an address with Defendant DDPA, and has Payer #51022. Throughout the Class Period, DDDE exercised control over the Delta Dental Plans Association. DDDE is the Delta Dental licensee for Delaware.

29.    Defendant DDDC shares an address with Defendant DDPA and has Payer #52147. Throughout the Class Period, DDDC exercised control over the Delta Dental Plans Association. DDDC is the Delta Dental licensee for the District of Columbia.

30.     Defendant HDS is located at 700 Bishop Street, Suite 700, Honolulu, HI 96813, and has Payer #99010. Throughout the Class Period, HDS exercised control over the Delta Dental Plans Association. HDS is the Delta Dental licensee for Hawaii.

31.     Defendant DDID is located at P.O. Box 2870, Boise, ID 83701, and has Payer #82029. Throughout the Class Period, DDID exercised control over the Delta Dental Plans Association. DDID is the Delta Dental licensee for Idaho.

32.     Defendant DDIL is located at P.O. Box 5402, Lisle, IL 60532, and has Payer #05030. Throughout the Class Period, DDIL exercised control over the Delta Dental Plans Association. DDIL is the Delta Dental licensee for Illinois.

33.     Defendant DDIN is located at P.O. Box 9085, Farmington Hills, MI 48333- 9085, and has Payer #DDPIN. Throughout the Class Period, DDIN exercised control over the Delta Dental Plans Association. DDIN is the Delta Dental licensee for Indiana.

34.     Defendant DDIA is located at P.O. Box 9000, Johnston, IA 50131-9000, and has Payer #CDIA1. Throughout the Class Period, DDIA exercised control over the Delta Dental Plans Association. DDIA is the Delta Dental licensee for Iowa.

35.     Defendant DDKS is located at 1619 N. Waterfront Parkway, P.O. Box 789769, Wichita, KS 67278-9769, and has Payer #E3960. Throughout the Class Period, DDKS exercised control over the Delta Dental Plans Association. DDKS is the Delta Dental licensee for Kansas.

36.     Defendant DDKY is located at P.O. Box 242810, Louisville, KY 40224- 2810, and has Payer #CDKY1. Throughout the Class Period, DDKY exercised control over the Delta Dental Plans Association. DDKY is the Delta Dental licensee for Kentucky.

37.     Defendant DDME is located at P.O. Box 2002 Concord, NH 03302-2002, and has Payer #02027. Throughout the Class Period, DDME exercised control over the Delta Dental

Plans Association. DDME is the Delta Dental licensee for Maine.

38.    Defendant DDMA is located at P.O. Box 2907, Milwaukee, WI 53201, and has Payer #04614. Throughout the Class Period, DDMA exercised control over the Delta Dental Plans Association. DDMA is the Delta Dental licensee for Massachusetts.

39.    Defendant DDMI is located at P.O. Box 9085, Farmington Hills, MI 48333- 9085, and has Payer #DDPMI. Throughout the Class Period, DDMI exercised control over the Delta Dental Plans Association. DDMI is the Delta Dental licensee for Michigan.

40.    Defendant DDMN is located at P.O. Box 59238, Minneapolis, MN 55459- 0238, and has Payer #26004 or 07000. Throughout the Class Period, DDMN exercised control over the Delta Dental Plans Association. DDMN is the Delta Dental licensee for Minnesota and North Dakota.

41.    Defendant DDMO is located at P.O. Box 8690, St. Louis, MO 63126-0690, and has Payer #43090. Throughout the Class Period, DDMO exercised control over the Delta Dental Plans Association. DDMO is the Delta Dental licensee for Missouri.

42.    Defendant DDNE is located at P.O. Box 245, Minneapolis, MN 55440- 0245, and has Payer #07027. Throughout the Class Period, DDNE exercised control over the Delta Dental Plans Association. DDNE is the Delta Dental licensee for Nebraska.

43.    Defendant DDNH is located at P.O. Box 2002 Concord, NH 03302-2002, and has Payer #02027. Throughout the Class Period, DDNH exercised control over the Delta Dental Plans Association. DDNH is the Delta Dental licensee for New Hampshire. DDNH also offers dental insurance plans in New Hampshire, Maine, and Vermont under the business name Northeast Delta Dental.

44.    Defendant DDNJ is located at P.O. Box 222, Parsippany, NJ 07054, and has

Payer #22189. Throughout the Class Period, DDNJ exercised control over the Delta Dental Plans Association. DDNJ is the Delta Dental licensee for New Jersey.

45.     Defendant DDNM is located at 2500 Louisiana Blvd., N.E., Suite 600, Albuquerque, NM 87110, and has Payer #85022. Throughout the Class Period, DDNM exercised control over the Delta Dental Plans Association. DDNM is the Delta Dental licensee for New Mexico.

46.     Defendant DDNY shares an address with Defendant Delta Dental Plans Association and has Payer #11198. Throughout the Class Period, DDNY exercised control over the Delta Dental Plans Association. DDNY is the Delta Dental licensee for New York.

47.     Defendant DDNC is located at P.O. Box 9085, Farmington Hills, MI 48333-9085, and has Payer #56101. Throughout the Class Period, DDNC exercised control over the Delta Dental Plans Association. DDNC is the Delta Dental licensee for North Carolina.

48.     Defendant DDOH is located at P.O. Box 9085, Farmington Hills, MI 48333-9085, and has Payer #DDPOH. Throughout the Class Period, DDOH exercised control over the Delta Dental Plans Association. DDOH is the Delta Dental licensee for Ohio.

49.     Defendant DDOK is located at P.O. Box 548809, Oklahoma City, OK 73154-8809, and has Payer #22229 and CDOK1. Throughout the Class Period, DDOK exercised control over the Delta Dental Plans Association. DDOK is the Delta Dental licensee for Oklahoma.

50.     Defendant DDOR is located at 601 SW 2nd Avenue, Portland, OR 97204, and has Payer #CDOR1. Throughout the Class Period, DDOR exercised control over the Delta Dental Plans Association. DDOR is the Delta Dental licensee for Oregon.

51.     Defendant DDPA is located at P.O. Box 2105, Mechanicsburg, PA 17055-6999,

and has Payer #23166. Throughout the Class Period, DDPA exercised control over the Delta

Dental Plans Association. DDPA is the Delta Dental licensee for Pennsylvania and Maryland.

52.    Defendant DDPR is located at P.O. Box 9020992, San Juan, Puerto Rico 00902-

0992, and has Payer #680652604. Throughout the Class Period, DDPR exercised control over

the Delta Dental Plans Association. DDPR is the Delta Dental licensee for Puerto Rico.

53.    Defendant DDRI is located at P.O. Box 1517, Providence, RI 02901-1517, and

has Payer #05029. Throughout the Class Period, DDRI exercised control over the Delta

Dental Plans Association. DDRI is the Delta Dental licensee for Rhode Island.

54.    Defendant DDSD is located at P.O. Box 1157, Pierre, SD 57501, and has

Payer #54097. Throughout the Class Period, DDSD exercised control over the Delta Dental

Plans Association. DDSD is the Delta Dental licensee for South Dakota.

55.    Defendant DDTN is located at 240 Venture Circle, Nashville, TN 37228-1699,

and has Payer #CDTN1. Throughout the Class Period, DDTN exercised control over the Delta

Dental Plans Association. DDTN is the Delta Dental licensee for Tennessee.

56.    Defendant DDVT is located at P.O. Box 2002 Concord, NH 03302-2002, and has

Payer #02027. Throughout the Class Period, DDVT exercised control over the Delta Dental

Plans Association. DDVT is the Delta Dental licensee for Vermont.

57.    Defendant DDVA is located at 4818 Starkey Rd., Roanoke, VA 24018-8510, and

has Payer #54084. Throughout the Class Period, DDVA exercised control over the Delta Dental

Plans Association. DDVA is the Delta Dental licensee for Virginia.

58.    Defendant DDWA is located at P.O. Box 75983, Seattle, WA 98175, and

has Payer #91062. Throughout the Class Period, DDWA exercised control over the Delta

Dental Plans Association. DDWA is the Delta Dental licensee for Washington.

59.    Defendant DDWV shares an address with Defendant Delta Dental Plans Association, and has Payer #31096. Throughout the Class Period, DDWV exercised control over the Delta Dental Plans Association. DDWV is the Delta Dental licensee for West Virginia.

60.    Defendant DDWI is located at P.O. Box 828, Stevens Point, WI 54481, and has Payer #39069. Throughout the Class Period, DDWI exercised control over the Delta Dental Plans Association. DDWI is the Delta Dental licensee for Wisconsin.

61.    Defendant DDWY is located at P.O. Box 29, Cheyenne, WY 82003-0029, and has Payer #CDWY1. Throughout the Class Period, DDWY exercised control over the Delta Dental Plans Association. DDWY is the Delta Dental licensee for Wyoming.

## V. FACTUAL ALLEGATIONS

### A. Background

62.    Delta Dental was founded in 1955 when the International Longshoremen's Union and Warehousemen's Union (together, "ILWU") decided to partner with dental associations in California, Oregon and Washington to provide dental healthcare for ILWU members' children.

63.    An October 29, 2018 presentation by Delta Dental of California shows how Delta Dental expanded across the nation over time:[4]

---

[4] Delta Dental, *Delta Dental of California: Form a Hearing* at 5 (Oct. 29, 2018), available at https://dfr.oregon.gov/business/reg/insurer/mergers/Documents/moda-delta/20181029-presentation-slides.pdf (last visited on April 10, 2020).



64.   The presentation states that as of October 2018, Delta Dental was the "[l]argest dental carrier in [the] country," with "$9.2 billion in revenue," and "$1.5 billion in general reserves."[5] DDCA presents itself as one of the leading pillars of the Delta Dental "enterprise," noting how it grew over time by creating or joining with other Delta Dental State Insurers.

65.   Delta Dental's national website states that "[i]n 1966, Delta Dental Plans Association was created in order to coordinate dental insurance for companies with employees in multiple states."[6] That coordination between Delta Dental Plans Association and the Delta

---

[5] *Id.* at 4.

[6] Delta Dental, *About Us*, https://www.deltadental.com/us/en/about-us.html (last visited Apr. 10, 2020).

Dental State Insurers is a crucial element of the conspiracy alleged herein.

66.     In the late 1980s, DDCA won the bid for the Civilian Health and Medical

Program of the Uniformed Services ("CHAMPUS") dental insurance program.[7]  The U.S.

Government Accountability Office describes CHAMPUS as "a fee-for-service health insurance

program that pays for a substantial part of the health care that civilian hospitals, physicians, and

others provide to [Department of Defense] beneficiaries."[8]  Because Delta Dental's CHAMPUS

program covered uniformed service members nationwide, this program led to even more

coordination between Delta Dental's national operations and their state member entities. In 1990,

DeltaUSA connected state and local plans to the same "National Provider File" database of dental

providers, which enabled Delta Dental member entities to provide Delta Dental coverage to

organizations with employees and subscribers located in multiple states.[9] The National Provider

File also gave Delta Dental Plans Association and its members access to the rates charged by

dental providers nationwide, which in turn facilitated the conspiracy alleged herein.  In the 1990s,

the Antitrust Division of the U.S. Department of Justice ("DOJ") challenged DDRI's use of a

"most favored nations" contractual clause that required dentists in its network to give DDRI any

lower price that they furnished to other health insurers.  A federal district court refused to dismiss

the DOJ's lawsuit, finding it had alleged a viable antitrust claim.  *See United States v. Delta*

*Dental of R.I.,* 943 F. Supp. 172, 179-80 (D.R.I. 1996).  DDRI eventually entered

---

[7] *See* Hillsboro Dentistry, *Delta Dental*, https://eastwinddentalcare.com/dental-post/delta-dental-insurance-dentist-hillsboro-oregon/ (last visited Jan. 31, 2020).

[8] U.S. Gen. Acct'g Off., GAO/HEHS-94-174, *Defense Health Care: Uniformed Services Treatment Facility Health Care Program* 1, n.2 (June 1994), available at https://www.gao.gov/assets/220/219701.pdf (last visited Apr. 10, 2020).

[9] *See* Hillsboro Dentistry, *Delta Dental*, https://eastwinddentalcare.com/dental-post/delta-dental-insurance-dentist-hillsboro-oregon/ (last visited Apr. 10, 2020).

16

into a consent decree, agreeing to abandon the most favored nations clause practice.[10] On May

19, 1995, DOJ entered into a similar consent decree with DDAZ.[11] In spite of these

governmental actions, Defendants' anticompetitive practices continue to this day.

67.     Today, the Delta Dental System "provide[s] coverage to more Americans than any

other dental insurance company."[12] "Delta Dental serves more than 80 million Americans" are

covered by Delta Dental plans across all "50 states, Puerto Rico and other U.S. territories."[13]

68.     The DDCA website describes the Delta Dental Plans Association as "a network of

companies that provides dental coverage to 80 million people in the U.S." DDCA continues by

stating that "Delta Dental of California, Delta Dental of New York, Inc., Delta Dental of

Pennsylvania and Delta Dental Insurance Company, together with our affiliate companies, form

one of the nation's largest dental benefits delivery systems, covering 36.8 million enrollees. All

of our companies are members, or affiliates of members, of the Delta Dental Plans Association, a

network of 39 Delta Dental companies throughout the country."[14] The Delta Dental State

Insurers are referred to on Delta Dental's website as "the national network" "of 39 independent

Delta Dental companies that provide dental insurance."[15]

---

[10] Final Judgment, *United States v. Delta Dental of R.I.*, No. 96-113P, (D.R.I. July 2, 1997),
https://www.justice.gov/atr/case-document/final-judgment-68 (last visited Apr. 10, 2020).

[11] Second Am. Final Judgment, *United States v. Delta Dental Plan of Ariz., Inc.*, Civ. No. 941793
(D. Ariz. May 19, 1995), https://www.justice.gov/atr/case-document/second-amended-final-judgment-0 (last visited Apr. 10, 2020).

[12] Delta Dental, *About Us*, https://www.deltadental.com/us/en/about-us.html (last visited Apr. 10,
2020).

[13] *Id.*

[14] DDCA, *Why do 80 million enrollees trust their smiles to Delta Dental?*,
https://www.deltadentalins.com/about/ (last visited Apr. 10, 2020).

[15] Delta Dental, *About Us*, https://www.deltadental.com/us/en/about-us.html (last visited Apr. 10,
2020); *see also* https://www.deltadental.com/us/en/dental-insurance/state-dental-insurance-plans.html (Apr. 10, 2020).

17

69.     Defendants operate a variety of dental insurance health plans that can be purchased through the Delta Dental State Insurers, including: Delta Dental Premier, Delta Dental PPO, and DeltaCare USA.

70.     Delta Dental Premier is a traditional fee-for-service plan that allows a subscriber to visit any licensed dentist and to change dentists without first obtaining permission from Delta Dental. According to Delta Dental, this plan "offers the largest network of dentists."[16]

71.     The Delta Dental PPO plan is a preferred provider program. According to Delta Dental, "[w]ith Delta Dental PPO you have access to a network of dentists who accept reduced fees for covered services…."[17]

72.     Defendants also offer a "Delta Dental PPO Plus Premier" plan, which combines the Delta Dental PPO and Premier networks. According to Delta Dental, "[w]ith this plan, even if your Delta Dental Premier dentist is not in the PPO network, you still receive the benefit of that dentist's contracted fee."[18]

73.     The DeltaCare USA plan is a prepaid plan that features set copayments, no annual deductibles and no maximums for covered benefits. In most states, a patient must select a primary care dentist in the DeltaCare USA network from whom they will receive treatment. Typically, a patient's out-of-pocket expenses will be lower with DeltaCare USA than with Delta Dental Premier or Delta Dental PPO.

74.     Defendants also offer Delta Dental Patient Direct, a dental service discount plan where the subscriber chooses from a panel of participating dentists who charge discounted fees.

---

[16] Delta Dental, *Dental Insurance*, https://www.deltadental.com/us/en/dental-insurance.html (last visited Apr. 10, 2020).

[17] *Id.*

[18] *Id*.

The subscriber pays these fees to the dentist at the time of treatment.

75.    Defendants also offer a specialized plan for members of the American Association of Retired Persons ("AARP").

76.    DDCA's website provides the following description of which Plans provide which programs:[19]

> Delta Dental of California offers and administers Delta Dental PPOTM and other fee-for-service dental programs for groups headquartered in the state of California.

> Delta Dental of New York offers and administers Delta Dental PPO and other fee-for-service programs in New York.

> Delta Dental of Pennsylvania and its affiliates offer and administer Delta Dental PPO and other fee for-service dental programs in Delaware (Delta Dental of Delaware), Maryland, Pennsylvania, West Virginia (Delta Dental of West Virginia) and the District of Columbia (Delta Dental of the District of Columbia).

> Delta Dental Insurance Company offers and administers Delta Dental PPO and other fee-for-service dental programs to groups headquartered or located in Alabama, Florida, Georgia, Louisiana, Mississippi, Montana, Nevada and Utah, and vision programs to groups headquartered in West Virginia. In Texas, Delta Dental Insurance Company offers and administers fee-for-service dental programs and provides a dental provider organization (DPO) plan.

> DeltaCare® USA is underwritten in these states by these entities: AL — Alpha Dental of Alabama, Inc.; AZ — Alpha Dental of Arizona, Inc.; CA — Delta Dental of California; AR, CO, IA, MA, ME, MI, MN, NC, ND, NE, NH, OK, OR, RI, SC, SD, VA, VT, WA, WI, WY — Dentegra Insurance Company; AK, CT, DC, DE, FL, GA, KS, LA, MS, MT, TN, WV — Delta Dental Insurance Company; HI, ID, IL, IN, KY, MD, MO, NJ, OH, TX — Alpha Dental Programs, Inc.; NV — Alpha Dental of Nevada, Inc.; UT — Alpha Dental of Utah, Inc.; NM — Alpha Dental of New Mexico, Inc.; NY — Delta Dental of New York, Inc.; PA — Delta Dental of Pennsylvania. Delta Dental Insurance Company acts as the DeltaCare USA administrator in all these states. These companies are financially responsible for their own products.

> The AARP® Dental Insurance Plan is insured by Delta Dental Insurance Company (Contract 1230) in AK, AL, DC, DE, FL, GA, LA, MD, MS, MT, NV, NY, PA, PR, TN, TX, UT, VI and WV, by Dentegra Insurance Company (Contract 1230) in

---

[19] DDCA, *Who We Are*, https://www.deltadentalins.com/about/legal/who-we-are.html (last visited Apr. 10, 2020).

AR, AZ, CA, CO, CT, HI, IA, ID, IL, IN, KS, KY, ME, MI, MN, MO, NC, ND, NE, NH, NJ, NM, OH, OK, OR, RI, SC, SD, VA, VT, WA, WI and WY, and by Dentegra Insurance Company of New England (Contract 1230) in MA. The plan is administered by Delta Dental Insurance Company. For Texas residents your Master Policy Form number is TX-AMD-MC-DPO-D-DC (DELTAUSA1-2005). These companies are financially responsible for their own products.

77.     Although the Delta Dental State Insurers operate in different states and territories, they offer a common set of dental insurance programs from which subscribers can choose.  These programs operate on a nationwide basis in terms of the overall structure of how participating dental providers are compensated.

78.     The Delta Dental State Insurers have achieved an unprecedented degree of dominance in the market for dental insurance as a result of the anticompetitive conduct detailed herein.  The Delta Dental State Insurers are typically the largest providers of dental insurance plans within their respective territories.

###    B.    Defendants' Market Allocation Conspiracy

79.     The Delta Dental Plans Association is a network of the 39 independent Delta Dental State Insurers.[20]

80.     The Delta Dental State Insurers are the members of, and govern, the Delta Dental Plans Association. The Delta Dental Plans Association is entirely controlled by its member Plans, all of whom are independent dental insurance companies or an affiliate of those companies. The Board of Directors of the Delta Dental Plans Association is comprised of Presidents and CEOs of the independent Delta Dental State Insurers.

81.     The Delta Dental Plans Association promotes this group of independent

---

[20] *See* Delta Dental, *About Us*, https://www.deltadental.com/us/en/about-us.html (last visited Apr. 10, 2020).

companies as a single provider ("Delta Dental") and names it as the nation's largest dental

insurance, covering more than 80 million Americans, and Delta Dental's website states that

"Delta Dental Plans Association is comprised of a network of . . . independent Delta Dental

companies . . . operating in all 50 states, Puerto Rico and other U.S. territories, and together [it]

provide[s] coverage to more Americans than any other dental insurance company."[21]

82.    Although the Defendant Delta Dental State Insurers do not compete directly with

each other using the "Delta Dental" brand in any other states or territories, and have never done

so since the Delta Dental organization was created in 1966, the independent Delta Dental State

Insurers are horizontal competitors.

83.    The Delta Dental Plans Association is an instrumentality of the Defendant Delta

Dental State Insurers.  The Delta Dental State Insurers elect the Board and appoint the officers of

the Delta Dental Plans Association.  The members of the Board and the officers of the Delta

Dental Plans Association are officers of the Defendant licensees.  The Delta Dental State Insurers

vote on any major actions of the Delta Dental Plans Association.  The Delta Dental State Insurers

thus exercise actual control over the major decisions of the Delta Dental Plans Association.

84.    The Defendant Delta Dental State Insurers have used their control over the Delta

Dental Plans Association to coordinate their activities.  The Delta Dental Plans Association and

its license agreements are key vehicles used by the Delta Dental State Insurers to enter into

agreements that restrain competition.  Each Delta Dental State Insurer has entered into a licensing

agreement with the Delta Dental Plans Association.  Each Defendant who is a licensee of the

Delta Dental Plans Association is an independent company or legal entity. Because of the control

that the Delta Dental State Insurers exercise over the Delta Dental Plans Association, the

---

[21] *Id.*

territorial allocation imposed by the Delta Dental Plans Association through these licenses is, in fact, a territorial allocation that the member Plans have agreed to implement.

85. Because the Delta Dental Plans Association is controlled by its member Delta Dental State Insurers, any agreement between the Delta Dental Plans Association and one of its member Plans constitutes a horizontal agreement between and among the Delta Dental State Insurers themselves.

86. The affiliate license agreements limit each Delta Dental State Insurer to compete on a branded basis only in its own assigned territory. Thus, each Delta Dental State Insurer is only licensed to provide "Delta Dental" branded dental insurance in a single territory, and has not sought to operate outside the territory using the "Delta Dental" name. Through the license agreement and the Delta Dental Plans Association – which the Delta Dental State Insurers collectively control – each Defendant agrees that the Delta Dental State Insurers will not compete under the "Delta Dental" trademarks and trade names outside of their designated territory and reports no revenue received from other territories. Thus, the territorial restraints imposed upon the Delta Dental State Insurers are nationwide.

87. The affiliations of "independent Delta Dental member companies" were fully encouraged by Delta Dental Plans Association. The organizations that were early to the Delta Dental development initiative won licenses in multiple states. As the Delta Dental Plans Association stated in a 2015 Form 990 filed with the Internal Revenue Service ("IRS"):[22]

---

[22] Supplemental Information to Form 990 (Schedule O, Form 990, Part VI, Section A, line 7a), *Delta Dental Plans Association* (2015), available at https://projects.propublica.org/nonprofits/display_990/362551984/2017_02_EO%2F36-2551984_990O_201512 (last visited Apr. 10, 2020).

THE ORGANIZATION HAS TWO CLASSES OF MEMBERSHIP - ACTIVE AND AFFILIATE  ANY DENTAL SERVICE CORPORATION THAT IS ACTIVELY ENGAGED IN ADMINISTERING A PREPAYMENT PROGRAM OR PROGRAMS IS ELIGIBLE FOR ACTIVE MEMBERSHIP  THE TERM "DENTAL SERVICES CORPORATION" MEANS ANY NOT-FOR-PROFIT CORPORATION ORGANIZED PRINCIPALLY TO PROVIDE DENTAL HEALTH CARE SERVICES BY MEANS OF CONTRACTS WITH DENTISTS  TO BE ELIGIBLE FOR AFFILIATE MEMBERSHIP, AN ORGANIZATION MUST BE (I) A NOT-FOR-PROFIT DENTAL CARE COMPANY THAT IS LOCATED OUTSIDE THE UNITED STATES, ITS TERRITORIES AND POSSESSIONS, OR (II) A CORPORATION, WHICH MAY BE A FOR-PROFIT CORPORATION (AND INCLUDING ANY ENTITY LOCATED OUTSIDE THE UNITED STATES, ITS TERRITORIES AND POSSESSIONS), WHICH DESIRES TO COOPERATE WITH THE ORGANIZATION AND/OR ITS AFFILIATES IN PROVIDING DENTAL PREPAYMENT PROGRAMS TO THE PUBLIC  AN ORGANIZATION WISHING TO BECOME A MEMBER MUST APPLY AND BE APPROVED FOR MEMBERSHIP  MEMBERS MAINTAIN THEIR MEMBER STATUS BY PAYING ANNUAL DUES AND ASSESSMENTS AND COMPLYING WITH THE ORGANIZATION'S MEMBERSHIP STANDARDS AND OTHER REQUIREMENTS  THE MEMBERS HAVE THE POWER (A) TO APPROVE AMENDMENTS TO THE ORGANIZATION'S ARTICLES OF INCORPORATION, BYLAWS AND THE MEMBERSHIP STANDARDS PORTION OF THE MEMBERSHIP STANDARDS AND GUIDELINES ADOPTED BY THE MEMBERS, (B) TO SET AND REVISE ANNUAL DUES, AND (C) TO ELECT AND REMOVE THE ORGANIZATION'S BOARD OF DIRECTORS

88.    Under this approach, "affiliate" membership in the Delta Dental Plans Association can include any non-profit or for-profit entity that "desires to cooperate with the [Delta Dental Plans Association] and/or its affiliates in providing dental prepayment programs to the public."

89.    The Delta Dental State Insurers' annual statements to state insurance departments also confirm that insurance premiums are "Allocated by States and Territories."[23] These statements also confirm that Defendants obtain revenues exclusively from their exclusive territories.

90.    Accordingly, efforts by a Delta Dental State Insurer using the "Delta Dental" brand to branch out of its territory and seek the business of an employer or group in another state have been rebuffed. This includes, for example, a Delta Dental State Insurer seeking to bid on a national retailer's dental insurance business being told that the account was reserved for another state's Delta Dental State Insurer.

91.    The affiliate license agreements between Delta Dental Plans Association and the Delta Dental State Insurers directs that the Delta Dental State Insurers are allowed to conduct

---

[23] *See, e.g.*, Annual Statement, *Delta Dental of Rhode Island* (for year ending Dec. 31, 2018), https://dbr.ri.gov/documents/divisions/insurance/financial_info/2018/Delta_Dental_of_Rhode_Island_-_YE_2018.pdf (last visited Apr. 10, 2020).

marketing and advertising using the Delta Dental trademarks and copyrights in exchange for adhering to various rules governing the scope and conduct of their business. Defendants collectively police the Delta Dental State Insurers' compliance with the license agreements to ensure the Delta Dental State Insurers are abiding by its rules, and possess the power to terminate a Delta Dental State Insurer's contract in the event of non-compliance.

92.    Defendants' scheme to provide dental insurance under the "Delta Dental" brand in exclusive territories constitutes a contract, combination, or conspiracy in violation of the antitrust laws.

93.    This restriction on competition enforced by the Delta Dental Plans Association and implemented by its members and their affiliates is not in the individual self-interest of each Delta Dental State Insurer, limits the Delta Dental State Insurers' abilities to grow and increase output, and effectively shackles the Delta Dental State Insurers as competitors.

94.    As a result of the anticompetitive agreements and practices alleged herein, Defendants have grown collectively to become the leading dental care insurer in the United States.

### C.    Defendants' Joint Anticompetitive Compensation of Dentists

95.    As reflected in the allegations, Defendants wield their considerable market power by compelling dentists to accept onerous reimbursement terms for services provided to Delta Dental-insured patients. This compulsion is implemented through standardized provider service contracts which, as the WSDA explained in the quotation above, are offered "on a 'take it or leave it' basis, with no room for negotiation, and with complete control of rates and terms."[24]

---

[24] WSDA, *WSDA Asks Attorney General to Investigate Potential Delta Antitrust Practices*, (July 2, 2018), https://www.wsda.org/member-center/delta/2018/07/02/wsda-asks-attorney-general-to-investigate-potential-delta-antitrust-practices (last visited Apr. 10, 2020).

Thus, for example, when Delta Dental adjusts its compensation rates for dentists under the Delta

Dental PPO plan or the Delta Dental Premier plan, it endeavors to ensure that those adjustments

are applied on a nationwide basis by all of the member Delta Dental State Insurers to the greatest

extent possible. This ensures that Delta Dental programs have common compensation structures

and operate as similarly as possible across the nation.

96.    In the Second Amended Complaint filed on April 21, 2017 in the CDA case, the

CDA attached a sample form provider agreement used by DDCA. The provider agreement

contains the following clause:[25]

**2. Basis of Fees.** A participating dentist will accept his or her "Contracted Fees"* fees with Delta Dental as full payment for services provided to any eligible patient.* If the participating dentist does not have a Contracted Fee with Delta Dental for a particular procedure submitted on an Attending Dentist's Statement, payment will be based on a maximum amount as determined by Delta Dental applying the same factors used for Contracted Fees.

The term "Contracted Fee" is defined in this sample agreement as follows:[26]

---

[25] Second Amended Complaint Ex. B, *California Dental Ass'n v. Delta Dental of Cal.*, Trans. ID# 60505636, No. CGC 14-538849 (S.F. Cal. Super. Ct. Apr. 21, 2017).

[26] *Id.*

"Contracted Fee" means the fee for each
Single Procedure that a participating dentist has
contractually agreed with Delta Dental to accept as
payment in full for treating Enrollees.

The "Contracted Fee" will be subject to a maximum
amount allowed as determined by Delta Dental for
the network, specialty and location in which the
dentist participates. The maximum amount is based
on an actuarial calculation, and taking into account
filed fees, general inflation rates, health care
inflation rates, market pricing by competitors, and
acceptability by customers. The maximum amount
will not be reduced unless participating dentists'
filed or submitted fees decrease to such an extent
that Delta Dental is warranted in reducing the
maximum amount allowed.

97. Current Delta Dental provider contracts contain similar non-negotiable fee

clauses. For example, the DDVA PPO form provider agreement states that "[i]n our Delta Dental

PPO program, we base our payments on Delta Dental PPO Allowances. You agree to accept

Delta Dental PPO Allowances as payment in full for Covered Benefits that you provide to Delta

Dental PPO Enrollees."[27]

98. Similarly, the DDCO standard agreement for dentists in its Premier network states

that "[t]he Corporation agrees to compensate the Dentist for covered benefits in the following

manner. The submitted charge for any covered service will be compared to the Maximum Plan

Allowance (the allowable amount as determined by Delta Dental for a procedure). The lesser of

---

[27] DDVA, *Delta Dental PPO Participating Dentist Agreement*,
https://www.deltadentalva.com/uploadedFiles/Dentists/DeltaDentalPPOcontract.pdf        (cached
version last visited Apr. 10, 2020).

the submitted charge or the Delta Dental Maximum Plan Allowance will be used to compute the patient copayment and compensation due to the Dentist . . . ."[28]

99.     Likewise, the DDRI provider agreement states that "[t]he Dentist shall be compensated for the provision of Covered Services in accordance with (i) the compensation arrangements established by Delta Dental from time to time; and (ii) the terms and conditions of the agreements entered into from time to time by Delta Dental or other Qualified Entities regarding provision of dental services to covered persons."[29]

100.     The DDNC PPO Provider Agreement states that "DDNC herein agrees to pay me for each commonly performed procedure performed by me to an eligible DDNC Subscriber in accordance herewith and covered by such subscriber's agreement with DDNC an amount equal to the Maximum Plan Allowance as established by DDNC and incorporated by reference herein, which fees may be amended from time to time by DDNC in its sole discretion."[30]

101.     Defendants leverage their market power to suppress and fix reimbursement rates paid to Delta Dental Providers. Numerous examples of Delta Dental's unilateral and unfair pricing practices have been revealed in recent years.

102.     For example, on June 15, 2011, DDWA imposed an average reduction of dentist compensation rates of 15 percent for providers in the Delta Dental Premier network and

---

[28] DDCO, *Delta Dental Premier Participating Dentist Agreement* ¶ 8(a), https://www.deltadentalco.com/uploadedFiles/Dentists/PremierAgreement.pdf (last visited Apr. 10, 2020).

[29] DDRI, *Participating Dentist Agreement* ¶ 2(a), https://www.deltadentalri.com/Content/Docs/ProvidersContract.pdf (last visited Apr. 10, 2020).

[30] DDNC, *Delta Dental PPO Participation Application and Agreement* ¶ 3, https://northcarolina.deltadental.com/content/dam/member-companies/north-carolina/form-library/Dentist%20Premier%20Contract.pdf (last visited Apr. 10, 2020).

5 percent for those in the Delta Dental PPO network.[31]

  103. In 2011, DDID reduced reimbursement rates in Idaho between 4 and 13 percent.[32] In 2013, DDNJ and DDCT instituted similar reductions.[33] Thereafter, DDMO cut dentist reimbursements in New Jersey by 4-5%, in Missouri by an average of 7 percent, and DDNH and DDVT implemented 4 percent rate cuts in their respective territories.[34] The same reason was given for all of the cuts: Delta Dental wanted to "remain competitive."[35]

  104. The same course of conduct was attempted in California. In August 2013, DDCA declined to honor its contractual commitment to dental service providers under its Premier Plan to calculate maximum reimbursement rates "based on actuarial calculation, and taking into account filed fees, health care inflation rates, market pricing by competitors, and acceptability by customers." Instead, DDCA allowed maximum fees existing as of January 1, 2011 for each dental procedure to remain in effect as the maximum allowable fee. This change in policy had the effect of eliminating language in dental service provider contracts that DDCA Delta will only lower its maximum amount payable if "participating dentists' filed or submitted fees decrease to

---

[31] ~~Kelly Soderlund,~~ *Delta Dental Cuts Reimbursement Fees for New Jersey and Connecticut Dentists*, ADA News, (June 18, 2012), http://www.ada.org/sitecore/content/home-ada/publications/ada-news/2012-archive/june/delta-dental-cuts-reimbursement-fees-for-new-jersey-and-connecticut-dentists (last visited Apr. 10, 2020).

[32] *Id.*

[33] *Id.*

[34] *Financial Management: Managed Care Update*, Advanced Practice Management, https://advancedpracticemanagement.com/financial-management-managed-care-update/ (last visited Nov. 22, 2019).

[35] Kelly Soderlund, *Delta Dental Cuts Reimbursement Fees for New Jersey and Connecticut Dentists*, ADA News (June 18, 2012), http://www.ada.org/sitecore/content/home-ada/publications/ada-news/2012-archive/june/delta-dental-cuts-reimbursement-fees-for-new-jersey-and-connecticut-dentists (last visited Apr. 10, 2020).

such an extent that Delta is warranted in reducing the maximum amount allowed." As noted above, the CDA responded by filing a suit for injunctive and monetary relief against DDCA in January of 2014. On March 27, 2015, the Superior Court denied DDCA's motion to dismiss for lack of standing and its demurrer to the complaint.[36] As noted above, the suit eventually resulted in a class action settlement for $65 million.

105. In Massachusetts, DDMA since 1990 had used a Consumer Price Index ("CPI") in calculating fees for dentists who provided services pursuant to its Delta Premier network. Dentists challenged those fees before the Massachusetts Department of Insurance ("MDOI"), and in April 2009, MDOI issued an opinion condemning this fee methodology and ordering DDMA to replace it.[37] The Hearing Examiner stated:[38]

> Delta has not justified why the cost to an urban consumer of purchasing a basket of goods and services on a retail basis constitutes a reasonable basis upon which to cap reimbursements of Premier participating dentists. Delta has not demonstrated that its CPI reflects a Massachusetts dentist's cost of doing business. I am not persuaded that these costs are tracked or mirrored by the consumer price index that Delta employs.
>
> \*     \*     \*
>
> Another problem with Delta's CPI adjustment is that, if the CPI-driven nature of the April 1, 2008 periodic update is duplicated for several periodic updates *ad seriatim*, the "customary maximum allowable fee" for a procedure will lag further and further behind the amount that lies at the 90th percentile of participating dentists' "usual fees" for that procedure. Over years of updates, the "customary" aspect of Premier's fee methodology would depart, for the vast majority of dental procedures, further and further from the reality of the 90th percentile at which Massachusetts dentists usually are charging their nonsubscriber patients. A fee methodology with such a dramatic disconnect is inherently unreasonable.

---

[36] ~~Order Denying Delta's Moti~~on to Dismiss, *California Dental Ass'n v. Delta Dental of Cal.*, Trans. ID# 56991002, No. CGC 14-538849 (S.F. Cal. Super. Ct. Mar. 27, 2015).

[37] Decision and Order Regarding the Fee Methodology of the Delta Dental Premier Plan, No. G2008-10 (Mass. Div. Ins. Apr. 14, 2009), https://www.mass.gov/files/documents/2016/07/ny/g2008-10.pdf.

[38] *Id.* at 14-15.

106.    In 2016, DDMA introduced a "Total Choice" plan, a new PPO product that reimbursed dentists at about 25 to 30 percent less than they received under the then-current Premier Plan. The director of dental practice and membership engagement services for the Massachusetts Dental Society, Ellen Factor, stated that the new PPO plan "was communicated to dentists with very short notice and caused considerable concern for dentists, employers and legislators."[39] However, due to DDMA's market power in Massachusetts, Delta Dental Providers were forced to either accept this new product offering or lose the business of their patients with Delta Dental insurance.

107.    In September 2019, DDMA abandoned use of the CPI and announced that reimbursements to providers would be further reduced by 8.8 percent for standard fee schedule rates.[40]

108.    Defendants' anticompetitive practices significantly impacted Plaintiff and Class members during the Class Period. Unlike other professional industries in which inflation-adjusted incomes have increased in recent years, average inflation-adjusted net income for dentists has steadily declined over the past decade, due in part to the conduct of Defendants. Meanwhile, Defendants' revenues have increased over the same time period.

109.    If Delta Dental State Insurers could compete with each other in the territories in which other Delta Dental State Insurers operate, the resulting competition would provide dentists with more opportunities to receive fairer compensation.

---

[39] David Burger, *Delta Proposes New Fee Methodology in Massachusetts*, ADA News (June 27, 2018), https://www.ada.org/en/publications/ada-news/2018-archive/june/delta-proposes-new-fee-methodology-in-massachusetts (last visited Apr. 10, 2020).

[40] Michael W. Davis, *Delta Dental of Massachusetts Patient Letter Upsets Dental Community*, Dentistry Today (Oct. 8, 2019), https://www.dentistrytoday.com/news/todays-dental-news/item/5452-delta-dental-of-massachusetts-patient-letter-upsets-dental-community (last visited Apr. 10, 2020).

110.     Defendants' conspiracy has also injured dental patients. As one Texas dentist said

about Delta Dental's plans to disallow payments for certain dental procedures:[41]

> This is all about money and money only regardless of what Delta states.
> They want to discourage treatment and make the dentist work harder and take
> more time to complete a procedure. The less money they pay, the more they make
> and profit. Also, Delta is hopeful that the patient will not return for the other
> quadrants of treatment. Again, money saved is money profited.
>                          *      *      *
> Insurance has cut the fees for dentistry by 30-70 percent for most common
> dental procedures. There is nothing about Delta or any other insurance for that
> matter, that they care or have any interest in "quality care."

111.     Defendants' compensation practices also undermine dentists' ability to serve

Medicaid patients. Because Delta Dental compensation levels do not adequately cover

dentists' rising costs, they have less ability to take time from their commercially insured

customers and serve the dental needs of Medicaid patients.

## VI. CLASS ACTION ALLEGATIONS

112.     Plaintiff brings this action under Rule 23(a) and Rule 23(b)(1), (b)(2), and (b)(3)

of the Federal Rules of Civil Procedure, seeking damages and injunctive relief on behalf of

himself and the following proposed nationwide class (the "Nationwide Class"):

> All Delta Dental providers, not owned or employed by any of the Defendants, that
> provided dental goods or services to a Delta Dental insured pursuant to a Delta
> Dental insurance policy within the United States and its territories and within four
> years of the date of filing of this action.

113.     Plaintiff also brings this action on behalf of himself and as a class action under

Rule 23(a) and Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, seeking

monetary damages and injunctive on behalf of the following proposed statewide New Jersey

---

[41] William H. Miller, *Letters: Delta Disallow Policy*, ADA News (Aug. 22, 2016),
https://www.ada.org/en/publications/ada-news/viewpoint/letters-to-the-
editor/2016/august/delta-disallow-policy (last visited Apr. 10, 2020).

class (the "New Jersey Class"):

> All Delta Dental Providers in the State of New Jersey, not owned or employed by any of the Defendants, that provided dental goods or services to a Delta Dental insured pursuant to a Delta Dental insurance policy within the State of New Jersey and within four years of the date of filing of this action.

114. The two Classes defined above are be referred to collectively herein as the "Classes."

115. Plaintiff believes there are tens of thousands of members of the Classes, the exact number and their identities being known by Delta Dental, making Class members so numerous and geographically dispersed that joinder of all members is impracticable.

116. There are numerous questions of law and fact common to each Class member, including, but not limited to:

a.  Whether the conduct of Defendants alleged in this complaint constituted an unlawful market allocation conspiracy in violation of Sections 1 and 3 of the Sherman Act;

b.  Whether the conduct of Defendants alleged in this complaint constituted an unlawful price-fixing conspiracy in violation of Sections 1 and 3 of the Sherman Act;

c.  Whether the conduct of Defendants alleged in this complaint caused damages to Plaintiff and other members of the Classes, and the amount and extent of those damages;

d.  Whether the conduct of Defendants alleged in this complaint is ongoing and should be enjoined; and

e.  For the New Jersey Class, whether the conduct of Defendants alleged in this complaint violated the New Jersey Antitrust Act.

117. Plaintiff's interests are typical of, and not antagonistic to, those of other or absent members of the Classes, such that it can fairly and adequately represent and protect the interests of absent Class members.

118. Plaintiff is represented by counsel who are competent and experienced in the

32

prosecution of antitrust and class action litigation.

119.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications.

120.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

121.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. The Classes are readily definable, and records of the Class members should exist in the files of Delta Dental Plans Association and the Delta Dental State Insurers. A class action will eliminate the possibility of repetitious litigation.

122.    Class treatment will also permit the adjudication of relatively small claims by many members of the Class who otherwise could not afford to litigate claims such as those asserted in this complaint. This class action presents no difficulties of management that would preclude its maintenance as a class action.

## VII. CAUSES OF ACTION

### COUNT ONE

### VIOLATION OF THE SHERMAN ACT, 15 U.S.C. § 1, *et seq.*

123.    Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though set forth herein.

124.    Plaintiff brings this claim under Section 4 of the Clayton Act (15 U.S.C. § 15) for

treble damages and interest on behalf of all National Class members, not owned or employed by any of the Defendants, that provided dental goods or services pursuant to a Delta Dental insurance policy within the United States and its territories within four years of the date of filing of this action.

125.    As alleged more specifically above, Defendants have engaged in a market allocation and price-fixing scheme that represent a contract, combination, or conspiracy in restraint of trade within the meaning of Section 1 and 3 of the Sherman Act (15 U.S.C §§ 1, 3).

126.    Defendants have agreed to divide and allocate the geographic markets for the provision of dental insurance into a series of exclusive territories for each of the Delta Dental State Insurers.  By so doing, Defendants have also entered into a contract, combination or conspiracy to suppress competition and reduce compensation to dental providers in violation of Sections 1 and 3 of the Sherman Act.  Due to the lack of competition resulting from Defendants' illegal conduct, providers who choose not to be in-network with Delta Dental have an extremely limited market for the dental services they provide and are undercompensated for those services. Defendants' anticompetitive acts are illegal *per se* under Section 1 and 3 of the Sherman Act or, at least, are subject to a "quick look" rule of reason analysis.

127.    As a direct and proximate result of Defendants' continuing violations of Sections 1 and 3 of the Sherman Act, the Plaintiff and members of the proposed Nationwide Class have suffered and continue to suffer injury and damages of the type that the federal antitrust laws were designed to prevent.  Such injury flows directly from that which makes Defendants' conduct unlawful.  These damages consist of having been paid less, having been forced to accept far less favorable rates and other contract terms, and/or having access to far fewer patients than they would have absent Defendants' anticompetitive agreement.

128.    Defendants' unlawful conduct threatens to continue to injure Plaintiff. Plaintiff seeks a permanent injunction pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26) prohibiting Defendants and all others acting in concert from continuing their illegal contract, combination, or conspiracy, and ordering Defendants to take appropriate remedial action to correct and eliminate any remaining effects of their illegal contract, combination, or conspiracy.

129.    Plaintiff reserves the right to seek preliminary injunctions as needed.

## COUNT TWO

### VIOLATION OF THE NEW JERSEY ANTITRUST ACT, N.J.S.A. § 56:9-1 *et seq.*

130.    Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though set forth herein.

131.    Plaintiff brings this claim under the New Jersey Antitrust Act for treble damages (N.J.S.A. § 59:9-12), costs, and attorneys' fees on behalf of all New Jersey Class members, not owned or employed by any of the Defendants, that provided dental goods or services pursuant to a Delta Dental insurance policy within the State of New Jersey within four years of the date of filing of this action.

132.    Plaintiff is a "person" within the definition set forth in the New Jersey Antitrust Act, N.J.S.A. § 59:9-2(a).

133.    As alleged more specifically above, Defendants have engaged in a market allocation and price-fixing scheme that represents a contract, agreement, combination, or conspiracy in restraint of trade or commerce within the meaning of Section 56:9-2(b) of the New Jersey Antitrust Act, N.J.S.A. § 56:9-2(b).

134.    Defendants have agreed to divide and allocate the geographic markets for the provision of dental insurance into a series of exclusive territories for each of the Delta Dental

35

State Insurers.  By so doing, Defendants have also entered into a contract, agreement, combination, or conspiracy to suppress competition and reduce compensation to dental providers in violation of Section 56:9-3 of the New Jersey Antitrust Act.  N.J.S.A. § 56:9-3.  Due to the lack of competition which results from Defendants' illegal conduct, New Jersey providers who choose not to be in-network have an extremely limited market for the dental services they provide and are undercompensated for those services.

135.    As a direct and proximate result of Defendants' continuing violations of Section 56:9-3 of the New Jersey Antitrust Act, Plaintiff and members of the proposed New Jersey Class have suffered and continue to suffer injury and damages to their business or property. Such injury flows directly from that which makes Defendants' conduct unlawful. These damages consist of having been paid less, having been forced to accept far less favorable rates and other contract terms, and/or having access to far fewer patients than they would have but for Defendants' anticompetitive agreement.

136.    Defendants' unlawful conduct threatens to continue to injure Plaintiff.  Plaintiff seeks a permanent injunction pursuant to violation Section 56:9-10 of the New Jersey Antitrust Act (N.J.S.A. § 56:9-10) prohibiting Defendants and all others acting in concert from continuing their illegal contract, agreement, combination, or conspiracy and ordering them to take appropriate remedial action to correct and eliminate any remaining effects of their illegal contract, agreement, combination, or conspiracy.

**PRAYER FOR RELIEF**

137.    WHEREFORE, Plaintiff, on behalf of himself and the proposed Classes of similarly situated persons and entities, respectfully requests that the Court:

      a.    Determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and Appoint

Plaintiff as a Class Representative, and Counsel for
Plaintiff as Class Counsel;

b.     Adjudge and decree that Defendants have violated
Sections 1 and 3 of the Sherman Act;

c.     Adjudge and decree that Defendants have violated the
New Jersey Antitrust Act;

d.     Permanently enjoin Defendants from entering into, or from
honoring or enforcing, any agreements that restrict the
territories or geographic areas in which any of the Delta
Dental State Insurers may compete;

e.     Permanently enjoin Defendants from continuing with
any price-fixing and to remedy all effects or vestiges
of their conspiracy;

f.     Permanently enjoin Defendants from retaliating
against Plaintiff for participation in the litigation;

g.     Require ongoing periodic reporting on compliance by the
Defendants, monitoring by the Court, and a process
through which Class members will be represented in any
compliance issue at Defendants' cost, all of which
should continue until Defendants show that they have
corrected the effects of their illegal conduct;

h.     Award the Plaintiff and the Classes treble the amount of
damages suffered by Plaintiff and members of the
Classes as proven at trial;

i.     Award costs and attorneys' fees to Plaintiff;

j.     Award prejudgment interest; and

k.     Award any such other and further relief as may be just and
proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(c), Plaintiff demands a trial by jury on all issues

so triable.

DATED:  April 10, 2020

Simon B. Paris
NJ ID # 049821996
Patrick Howard
NJ ID # 022802001
Charles J. Kocher
NJ ID # 016952004
**SALTZ, MONGELUZZI,**
**& BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA  19103
Telephone:  (215) 496-8282
Facsimile:  (215) 754-4443
sparis@smbb.com
phoward@smbb.com
ckocher@smbb.com

*Attorneys for Plaintiff and*
*the Proposed Classes*